WILLIAM GOOD ex rel. MARY McBRIEN, Respond-
ents, v. PARKHURST SLEETH et al., Appellants.

St. Louis Court of Appeals, July 16, 1913.

1. **SHERIFFS AND CONSTABLES:** Executions: Payment of
Money to Judgment Creditor: Right of Constable to Take
Indemnity: Bonds. Sec. 7551, R. S. 1909, providing that if a
constable levy an execution on "goods or chattels" and any third
person claim such property, the constable, "before proceeding

Good ex rel. v. Sleeth.

to sell such property," shall take of the plaintiff a bond conditioned to indemnify him against all damage sustained in consequence of the "seizure and sale of the property on which the execution shall have been levied," and all damages sustained by the claimant in consequence of such seizure ·and sale, does not authorize a constable to require a bond to indemnify him and a claimant against damage from the payment ·to an ·execution creditor of money which had been turned over to him by a garnishee, pursuant to an agreement between the ·execution creditor, the garnishee and the claimant, whereby · the title to the fund was to be determined by proceedings before the justice who issued the execution; there being neither a "seizure" nor a "sale" of any property, necessary to the existence of the right to require a bond under the statute.

2. ————: ————: ————: ————: ————. Sec. 2204, R. S. 1909, providing that, when personal property, etc., shall be seized under execution and a written claim thereto, verified by affidavit, shall be made by any person other than the debtor, the officer shall abandon the levy, unless the execution creditor furnishes an indemnifying bond, does not authorize a constable to require a bond to indemnify him and a claimant against damage from the payment to an execution creditor of money which had been turned over to him by a garnishee, pursuant to an agreement between the execution ·creditor, the garnishee and the claimant.

3. ————: ————: ————: ————: ————. Bonds taken by officers to indemnify them and claimants against damages resulting from the payment of money to an execution creditor, to which a claim is made by such claimants, are ordinary considered as not having been given under duress, and their execution creates a binding obligation, unless prohibited by the policy of the law.

4. ————: ————: ————: ————: ————. A constable has no ·common law right to demand the giving of a bond to indemnify him and a claimant against damages from the payment to an execution creditor of money to which a claim is made by such claimant.

5. JUSTICES' COURTS: Garnishment: Right to Interplead. The question of whether one has a right to interplead in a garnishment proceeding under an execution issued by a justice of the peace, is not involved in this case and hence will not be decided, but the court *holds* that it seems that the legislative intent, as expressed in Art. 3, Chap. 66, R. S. 1909, was not to exclude the right to interplead in such a case, and that the intention was to confer such right.

6. SHERIFFS AND CONSTABLES: Executions: Payment of Money to Judgment Creditor: Indemnifying Bond: Action by

Good ex rel. v. Sleeth.

**Third Party Claimant: Estoppel.** After a person had been garnished under an execution issued by a justice of the peace, the garnishee, the execution creditor, and the wife of the execution debtor, who claimed the fund in the hands of the garnishee, agreed that such fund should be turned over to the constable and that the right thereto would be tried and determined in the garnishment proceeding before the justice. The justice subsequently rendered a judgment that the execution creditor was entitled to the fund and directed the constable to pay it over to him. The wife having notified the constable of her claim, the latter required the execution creditor to give him a bond to indemnify him and claimant against any damages that might be sustained in consequence of such payment. *Held*, that, in view of the fact that the agreement between the garnishee, the execution creditor and the claimant contemplated claimant's right to the fund would abide the decision of the justice, claimant was estopped to proceed upon the bond for damages suffered by reason of the payment.

7. ———: ———: **Right of Constable to Require Indemnity: Bonds.** After a person had been garnished under an execution issued by a justice of the peace, the garnishee, the execution creditor, and the wife of the execution debtor, who claimed the fund in the hands of the garnishee, agreed that such fund should be turned over to the constable and that the right thereto would be tried and determined in the garnishment proceeding before the justice. The justice subsequently rendered a judgment that the execution creditor was entitled to the fund and directed the constable to turn it over to him. The wife having notified the constable of her claim, the latter required the execution creditor to give him a bond to indemnify him and claimant against any damages that might be sustained in consequence of such payment. *Held*, that the bond could not be upheld as a voluntary common law obligation, for the reason that it was the duty of the constable to obey the judgment, and hence there was no consideration for the bond.

8. ———: ———: **Right to Require Indemnity: Bonds: Validity.** A contract to indemnify a sheriff or other ministerial officer for omitting to do that which he ought to do is void as against public policy, and an undertaking to indemnify an officer against the performance of a clear and unquestionable official duty is supported by no consideration and is likewise void. If the act the officer is required to perform is necessarily wrongful or necessarily rightful, he is not entitled to be indemnified, and any bond to indemnify him must be void, either as being against public policy or as not being supported by a valid consideration.

Appeal from St. Francois Circuit Court.—*Hon. Peter H. Huck*, Judge.

REVERSED.

*Jerry B. Burks* for appellants.

The bond sued on is an indemnifying bond, is so denominated by the statute and the decisions of the courts of this State. Sec. 7551, supra; Smith to use v. White, 48 Mo. App. 404; State ex rel. v. Slayback, 90 Mo. App. 300. And being so, and the statute providing that the suit can be brought direct by claimant only in cases where property is seized and sold, plaintiff ought not to be permitted to avail herself of the benefit of this statute on a state of facts wholly at variance with it.

*W. L. Coley* and *B. H. Marbury* for respondents.

Answering point made by respondent that, "a bond can be required only when property is actually seized by the officer and is to be sold. The statute has no application to the garnishment of a debt or credits," we have to say that Sec. 2204 of the statute, relative to such bonds, uses the words "personal property," and Sec. 8057 says, "The words, 'personal property' shall include money, goods, chattels, things in action and evidence of debt." And Sec. 11519 says, "The term 'personal property' . . . shall be held to mean and include bonds, stocks, moneys, credits, etc.," and further on in that section, "The term property . . . shall be held to mean and include every tangible or intangible thing being the subject of ownership, either animate or inanimate, real or personal." In the case of State ex rel. v. Slayback, 90 Mo. App. 300, the language is, "seized or sold," not seized and sold, as indicated by respondent, and in that case the property was seized, but was not sold, yet the relator was held entitled to recover.

ALLEN, J.—This is an action on an indemnifying bond given by appellants to plaintiff, William Good, constable of St. Francois township, St. Francois county, prosecuted in the name of the latter for the use and benefit of the relator, Mary McBrien. The bond was executed by the defendant, Parkhurst Sleeth, personally, and also as administrator of the estate of Merrifield W. Huff, deceased, as principals, and M. P. Cayce and W. B. Rariden, as sureties. Plaintiff recovered and the defendants prosecute the appeal.

It appears that, on September 22, 1902, Parkhurst Sleeth and Merrifield Huff obtained a judgment against one John McBrien before a justice of the peace of St. Francois township, St. Francois county, Missouri, in the sum of $225. That thereafter, on or about January 14, 1910, this judgment was revived in the name of Parkhurst Sleeth, individually, and Parkhurst Sleeth, administrator of the estate of Merrifield W. Huff, the latter having died in the meantime; that thereafter, on September 3, 1910, an execution issued from the justice court against the said judgment debtor, John McBrien, the same being delivered to the constable, William Good, plaintiff herein; that, on or about the 10th day of September, 1910, the constable executed said writ by summoning one Harry E. Highley as garnishee to appear before the justice of the peace on September 16, 1910, to answer such interrogatories as might be exhibited against him touching his indebtedness to the said John McBrien, and by then and there attaching, in the hands of said Highley, all debts due or owing by him to said John McBrien, and particularly the sum of $352.91 then in his possession.

It appears that, at the time of the service of the writ of garnishment on Highley, the latter was indebted to either John McBrien or the latter's wife, Mary McBrien, in the said sum of $352.91, for cattle which had been sold and delivered to said Highley by John McBrien. It was claimed by both John McBrien

and Mary McBrien that the cattle so sold were the property of Mary McBrien, that they had been sold by John McBrien as her agent, and that the proceeds of the sale thereof were due to her.

It appears that on the afternoon of the day upon which the writ was executed, viz., September 10, 1910, an oral agreement was entered into at the office of the justice of the peace between counsel for the execution creditors, counsel for John McBrien and Mary McBrien and Highley, the garnishee, to the effect that the money in the latter's possession would be turned over forthwith to the constable. Just what was the precise conversation had does not appear, though it does appear, and we think clearly, that the understanding and agreement was that the ownership of the cattle, and the right to the proceeds thereof in question, would be tried and determined in the garnishment proceeding before the justice; that an interplea on the part of Mary McBrien was contemplated, and that the constable would merely hold the fund pending a judgment of the justice in the premises. Pursuant to the agreement had, the fund was delivered to the constable, the latter executing to the garnishee the following receipt:

"352.91.    .    Sept. 10, 1910.

"Received of Harry Highly three hundred and fifty-two and 91-100 dollars. The same to be held by me until the garnishment suit pending in the case of Sleeth et al. v. John McBrien and Harry Highley, as garnishee, is determined, the sum herein paid being deposited by garnishee.    .    .

"Wm. Good,
    "Constable."

Thereafter, on September 16, 1910, the garnishee, Highley, filed his answers to the interrogatories as follows:

"Answer to First Interrogatory: I had no money of defendant except as stated in my answer to interrogatory number two.

"Answer to Second Interrogatory: At the time of the service of the writ of garnishment I owed and was indebted to defendant John McBrien for cattle purchased from him the sum of approximately, $1454.07. Of this amount, by agreement between plaintiffs and defendant, I paid to the constable of this court the sum of $352.91 to abide the judgment of this court, which said sum was paid on the date of service of notice of garnishment, the balance of said debt, I paid to John McBrien in pursuance of agreement between said plaintiffs and defendant.

"Therefore, having paid into court the amount aforesaid, and having fully answered in this behalf, garnishee asks to be discharged."

Thereafter, on September 19, 1910, the justice of the peace entered the following judgment, viz.:

"Now on this 19th day of September, it appearing to the court that the answers of garnishee admit that he owed defendant John McBrien the sum of $352.91, and has paid said sum to the constable, it is, therefore adjudged that plaintiffs are entitled to said sum of $352.91, and the constable is directed to turn said sum over to plaintiffs, less costs of suit. It is, further ordered that the garnishee be discharged with his costs."

It appears that, on or about September 16, 1910, Mary McBrien delivered to the constable, plaintiff herein, a written notice, vertified by affidavit, that she claimed the said fund of $352.91 paid into the hands of the constable by the garnishee as aforesaid; and that thereupon on September 20, 1910, the constable made demand in writing upon Parkhurst Sleeth, individually, and as administrator of the estate of Merrifield W. Huff, deceased, to execute and deliver to him,

as said constable, a bond; and that thereafter, on September 21, 1910, the appellants herein executed and delivered to the constable the bond here sued upon, whereupon the constable paid to Parkhurst Sleeth, individually, and as administrator as aforesaid, the said fund in his hands.

The bond is conditioned as follows:

"Now, if the said Parkhurst Sleeth, as administrator of the estate of M. W. Huff, deceased, and Parkhurst Sleeth individually shall indemnify the said William Good, constable as aforesaid, against all damages and costs which he may sustain in consequence of the seizure of said three hundred fifty-two and 91-100 ($352.91) dollars, and payment of same, or any part thereof, to said Parkhurst Sleeth, administrator as aforesaid, and Parkhurst Sleeth personally; and moreover shall pay and satisfy said Mary McBrien all damages which she may sustain in consequence of such seizure and payment of same, this bond to be void; otherwise to remain in full force and effect."

The relator, Mary McBrien, now prosecutes this suit, in the name of the constable, William Good, averring that, at the time of the service of the writ of garnishment on Highley, the latter was indebted to her in the sum of $352.91 for cattle sold by her husband as her agent, and that she had sustained damages in the sum of $352.91 in consequence of the "seizure and payment of the said $352.91;" alleging a breach of the obligation of the bond, in that the principals and sureties thereon had not paid over and satisfied her for the "damage which she has sustained in consequence of the seizure of said $352.91, and the payment of the same by the said William Good, constable, to said Parkhurst Sleeth individually, Parkhurst Sleeth, administrator," etc. And the petition prays judgment for $700, the penalty of the bond, and costs, to be satisfied upon the payment of $352.91, with interest from September 10, 1910, and costs.

Good ex rel. v. Sleeth.

The answer denied that the garnishee was indebted to Mary McBrien, denied that the cattle sold were hers or that the proceeds thereof belonged to her, averred that the garnishee deposited the fund in question with the constable in pursuance of an agreement between John and Mary McBrien, and their attorney acting for them, and Parkhurst Sleeth, to the effect that the money so deposited should abide the result of the garnishment suit then pending. The answer then sets up the answer of the garnishee to the interrogatories propounded to him, the judgment of the justice of the peace in the garnishment proceeding, and avers that, by reason of the agreement aforesaid and the said judgment, 'the relator is estopped from further claiming said fund. The answer denies a breach of the bond, or that the relator, Mary McBrien, was damaged in consequence of the seizure and payment over of the $352.91. And the answer further avers that Mary McBrien was not, at the time of the service of the writ of garnishment, in good faith the owner of the cattle or the proceeds of the sale of the same, but that her pretended ownership thereof was fictitious and fraudulent and made collusively with her husband for the purpose of aiding and abetting him in covering up his property to defeat his creditors, and for the purpose of defrauding Parkhurst Sleeth, and the estate of which he was administrator.

The reply was a general denial of new matter in the answer.

At the close of plaintiff's evidence, the defendants offered a peremptory instruction in the nature of a demurrer to the evidence, which was refused by the court. And a like instruction offered at the close of all the evidence in the case was likewise refused. The cause was submitted to the jury upon instructions which we deem it unnecessary to set out.

The appellants urge that their demurrer should have been sustained. The authority of the constable

for requiring the giving of a bond under the circumstances is predicated upon section 7551, Revised Statutes 1909. This section, of which we italicize certain portions, is as follows:

"If a constable levy an execution on *any goods or chattels,* and any person other than the defendant in the execution claim *such property,* and deliver to the constable a written notice of such claim, verified by the affidavit of the claimant or his agent, describing the property claimed, and stating his interest therein, whether it be in whole or in part thereof, and that he is, in good faith, the lawful owner of the interest claimed by him in said property, that the defendant in said execution has no right or title whatever in the interest claimed, and that said claim is not made in collusion with the defendant, for the purpose of vexing, hindering or delaying the plaintiff in obtaining his just rights, the constable, *before proceeding to sell such property,* shall take of the plaintiff a bond, payable to himself, with good security, and conditioned to indemnify him against all damages and costs which he may sustain *in consequence of the seizure and sale of the property on which the execution shall have been levied;* and, moreover, to pay and satisfy any person or persons claiming title to such property, all damages which such person or persons may sustain *in consequence of such seizure and sale.*"

In Smith ex rel. v. Rogers, 191 Mo. 336, 90 S. W. 1150, the court reviews its earlier decision in State ex rel. O'Bryan v. Koontz, 83 Mo. 323, saying that in the latter case, "after a learned and exhaustive discussion of the rights of an officer at common law to demand an indemnifying bond, in the absence of statutory authority so to do, the conclusion was reached that such rights as existed at common law did not obtain in this State as to a constable, for the reason that justices of the peace in this State have no common law jurisdiction; that the right of a constable to

·demand an indemnifying bond exists only by virtue ·of the statutes of this State.''

We are unable to see how the statute quoted above ·could confer upon the constable, the plaintiff herein, .any right or authority to demand the giving of this bond. The statute, by its terms, permits and author- izes the constable to take a bond if he shall levy an ·execution on any *goods or chattels,* and any person ·other than the defendant in the execution shall claim ·*such property,* etc. Upon compliance with the provi- ·sions of this section by the third person claiming the property, the constable, *before proceeding to sell such property,* is authorized to take a bond payable to him- self, conditioned to indemnify him against all dam- .ages and costs which he may sustain *in consequence of the seizure and sale* of the property, and to pay and satisfy any person or persons claiming title to the property, all damages which they may sustain *in con- sequence of such seizure and sale.* Here, there was no ·execution levied upon any goods or chattels, but the proceeding was one in garnishment. Neither the plaintiff nor the relator suffered any damages in con- ·sequence of the seizure and sale of any property. There cannot be said to have been even a seizure of the money; for, while the garnishment writ was served, the fund in question came into the hands of the con- stable by and through an agreement with the relator .and with her consent. The statute by its terms could not apply to the situation here presented, and the offi- ·cer, under the circumstances, could not lawfully de- mand the giving of such bond. It will be observed that the bond does not follow the statute, but is conditioned that Parkhurst Sleeth, personally, and as administra- tor, shall indemnify the constable against damages .and costs in consequence of the seizure of the fund in question, and the *payment* of the same, or any part thereof, etc., and shall satisfy Mary McBrien all dam- .ages which she may suffer in consequence of such *seiz-*

*ure and payment.* It is urged by learned counsel for respondent that section 2204, Revised Statutes 1909, relative to bonds of this character used the words ''personal property,'' which counsel says includes money or credits. It is quite clear, however, that the latter section has no application here, and that the right of the constable to demand such a bond is controlled by section 7551, supra.

Respondent's counsel, however, urge that, though the bond be not authorized by statute, and not a statutory bond, nevertheless its validity does not depend exclusively upon whether the constable was empowered by statute to exact it, but that its execution is to be regarded as voluntary, and as creating a valid common law obligation. It is true that such bonds are ordinarily considered as not having been given under duress, and that their execution creates a binding obligation, unless prohibited by the policy of the law. [See Smith v. Rogers, 99 Mo. App. l. c. 261, 262.] It is quite clear that the constable had no common law right to demand the giving of the bond, but whether a bond given under such circumstances may be held to be a valid obligation as having been voluntarily executed is a matter which we need not decide. In Smith ex rel. v. Roger, 91 Mo. 334, the contrary appears to be intimated, though that question was not there directly involved, neither was it in State ex rel. O'Bryan v. Koontz, there referred to, the latter being an action upon a constable's official bond for releasing property seized, upon the failure of an attaching creditor to furnish a bond, and dealt exclusively with the officer's right to require a bond under the circumstances involved.

The case before us seems to be controlled by other considerations to which we shall hereinafter refer.

It appears that the fund in question was paid into the hands of the garnishee in pursuance of an agreement to which the relator, Mary McBrien, was a party.

pending the determination of the garnishment proceeding; and we think it conclusively appears that this was done with the understanding that the relator would abide the result thereof. At that time she contemplated filing an interplea, though it seems that thereafter she was advised that she could not do so. At any rate, she took no further steps in the premises, except to later notify the constable that she claimed the property.

There are cases in this State holding that a third party cannot interplead in a garnishment under an execution, but that such right obtains only in a garnishment under an attachment. Such is the early case of Wimer v. Pritchartt, 16 Mo. 252, which case arose in the St. Louis Court of Common Pleas, and which is followed by *dicta* in State to use v. Barada, 57 Mo. 562, and in Strauss v. Rothan, 41 Mo. App. 1. c. 610. In Schawacker v. Dempsey, 83 Mo. App. 1. c. 352, upon the authority of Wimer v. Pritchartt and Strauss v. Rothan, supra, it is held that there is no right to interplead in garnishment proceedings under executions issued from the circuit court. The holding in Wimer v. Pritchartt, supra, appears to have been disapproved in Smith v. Sterritt, 24 Mo. 260, where the right to interplead in a garnishment under an execution in a justice court was recognized, and it is clear that the Wimer case was so decided for the reason that the statutes there under consideration provided for an interplea only in garnishments under attachments and not under executions. [See section 34, chapter 11, p. 153, and section 6 of chapter 31, p. 476, Rev. Stat. 1845.]

Since the early decisions on this subject, our statutes have undergone many changes, and there appears to be some confusion in the cases which touch upon this subject. The question would seem to be now controlled by the provisions of article 3 of chapter 66, Revised Statutes 1909, relating to garnishments before

a justice of the peace. By section 7732 of that article it is provided that "if there be not sufficient goods and chattels whereon to levy an execution, the constable shall summon, in writing, as garnishees, such debtors . . . as may be named to him by the plaintiff or his agent," etc., to answer interrogatories, and that "like proceedings shall be had thereon before the justice to final judgment and execution, as in suits instituted by attachment in justices' courts."

Section 7745 of this article provides that "any person claiming property, money, effects or credits attached, may file his interplea, in writing, in the cause, supported by affidavit; and verbal issues may be taken to such interplea, and shall be tried as issues between plaintiff and defendant, in ordinary cases, and without unnecessary delay."

Succeeding sections provide that the justice shall file such interplea, and note the filing thereof and the substance of the issues upon his docket; and that no judgment shall be rendered against the garnishee until the issue upon such interplea shall be determined.

When the various sections of the statutes above referred to are read and construed together, it would seem that the legislative intent was not to exclude the right to interplead in a garnishment under an execution in a justice court, but that the intention is to confer such right. The use of the word "attached" in section 7745, supra, should not be construed as making that section apply only to garnishments in attachment suits, for it seems quite clear that the use of this term is merely in keeping with the form and effect of the garnishment writ, which, in conformity to the law governing such writs, and whether it issues under an attachment or an execution, summons the garnishee to appear and answer interrogatories, and *attaches* in his hand the money, rights, credits, etc., in his possession, or under his control, belonging or owing to the debtor.

Good ex rel. v. Sleeth.

However, the relator's right to interplea is not here directly in question. And whether the early decisions of our Supreme Court respecting that question are any longer applicable and now controlling upon us is a matter which we need not undertake to determine. Hence, we make no decision as to this particular point.

The record does disclose, however, that the relator consented and agreed that the money be paid to the constable pending the determination of the garnishment proceeding. The attorney who then represented her testified at the trial that he did not bind his client to an interplea. However, it seems clear that the agreement contemplated that the relator's right to the fund would abide that proceeding, however much she may have misconceived her rights in the premises. The justice rendered judgment on the garnishee's answer, directing the constable to pay over to the execution creditors the fund which had in fact come into his hands with the relator's consent and by virtue of her agreement. It then became the duty of the constable to pay over the money in accordance with the mandate of that judgment. And it would seem that the relator should be held to be estopped to proceed upon the bond as for damages suffered by reason of such payment.

But however this may be, we think it clear that no action can be maintained upon the bond for want of a valid consideration to support it, even could the latter be regarded as a voluntary obligation, as respondent's counsel contend. After the entry of the judgment of the justice, it became the plain duty of the constable to pay over the fund in his hands as that judgment directed. It has been frequently held that a contract to indemnify a sheriff, or other ministerial officer, for omitting to do that which he ought to do is void as against public policy. [See Harrington's Adm'r. v. Crawford, 136 Mo. 467, 61 Mo. App. 221, 38

S. W. 80, and authorities cited.] On the other hand, an undertaking to indemnify an officer against the performance of a clear and unquestionable official duty is supported by no consideration, and is likewise void. If the act which the officer is required to perform is necessarily wrongful or necessarily rightful, he is not entitled to be indemnified, and any bond to indemnify him must be void, either as being against public policy or as not being supported by a valid consideration. The act must be one concerning which the officer may properly entertain a reasonable doubt; if it is something which the law forbids him to do, he should refrain therefrom, whether indemnified or not, and if it is an act which he must know that it is his clear duty to perform, then he must perform it without exacting an indemnity. [See discussion in notes to Rohan v. State, 89 Am. St. Rep. 405.].

Here the bond was to indemnify the constable and the relator for an act to be done by the officer in obedience to the command of a judgment. The judgment of the justice was a valid and subsisting judgment. It ordered that the fund which had been deposited with the constable by the garnishee be paid over to the execution creditors. The constable, as an officer of the court, was under a legal obligation to obey the command of that judgment; he had no alternative to do otherwise, and could have entertained no doubt as to his duty in the premises. His act in paying over the money in compliance with the judgment furnished no consideration for the execution of the bond. The latter must therefore be held to be void for want of a consideration to support it.

The facts to which we have referred above were set up in defense and were fully established by the evidence. The court should therefore have directed a verdict for the defendants. The judgment should be reversed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.